UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

CATHERINE GRESKO, et al.,

                Plaintiffs,

      v.

PEMBERTON TOWNSHIP BOARD OF
EDUCATION,

              Defendant.

_____

No. 1:19-cv-00638 (NLH)(KMW)

**OPINION**

**APPEARANCES:**

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

    *Attorney for Plaintiffs.*

VICTORIA SIMOES BECK
WILLIAM CLAWGES MORLOK
PARK MCCAY P.A.
9000 MIDLANTIC DRIVE
SUITE 300
MOUNT LAUREL, NJ 08054

    *Attorneys for Defendant.*

**HILLMAN**, District Judge

    This matter arises from an administrative due process proceeding regarding special education services under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. ("IDEA"). The parties reached a settlement in the underlying case and Plaintiffs Catherine and Joseph Gresko now

seek attorney's fees and costs from Defendant Pemberton Township Board of Education.  Before the Court is Plaintiffs' motion for summary judgment (ECF No. 31) and motion to strike (ECF No. 35), both of which Defendant has opposed, (ECF No. 34 and 39), as well as their request for redactions (ECF No. 38).

For the reasons expressed below, Plaintiffs' motion to strike will be denied, and their motion for summary judgment will be granted in part, with Defendant ordered to reimburse Plaintiffs' counsel a reduced amount of the fees requested.  The Court further reserves decision on the redaction request until Plaintiff has filed a proper motion.

### Background

The Court takes the relevant facts below from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a) and notes disputes where appropriate.  Plaintiffs are the parents of J.G., a child with a disability eligible for special education and related services under the IDEA.  J.G., who was approximately three years old at the time this dispute began, attended the Pemberton Early Childhood Education Center starting in January 2018.  On January 3, 2018, J.G.'s mother, Catherine, attended a meeting held to create an Individualized Education Program ("IEP"), a program laying out the in-school services J.G. would receive to address his disability.  The initial IEP offered for J.G. involved the following: (1) 28

2

group sessions of speech language therapy for 15 minutes per session over the course of the year, for a total of 420 minutes per year; and (2) 16 group sessions of occupational therapy for 30 minutes per session over the course of the year, for a total of 480 minutes per.  J.G.'s father, Joseph, signed off on the implementation of this initial IEP on January 17, 2018, and J.G. began receiving services shortly after.

Over the following weeks, Catherine came to believe that J.G. was not progressing, and requested that the school increase his services to multiple times per week and switch his speech therapy sessions to "one-on-one."  With no change having yet been made by late March of 2018, Plaintiffs, without an attorney, prepared and filed a Parental Request for Mediation Only with the New Jersey Office of Special Education Programs. In the mediation request, Plaintiffs requested J.G.'s services be increased "to 15 minutes x 4 days a week 1:1 not group." (ECF No. 31-2 at ¶ 14).

On April 16, 2018, another IEP meeting was held.  At that meeting, Defendant put forth a proposed new IEP that would provide for "individual speech and language services 4x per week for 15 minutes (60 minutes per week, total) and individual occupational therapy services for 30 minutes per week." (Defs.

SOMF at ¶ 4).[1]  Following that meeting, Catherine emailed Christina Hale, Defendant's Assistant Director of Special Services, discussing potential dates for a mediation session if necessary and stating "me and school had a iep meeting today to discuss a agreeable iep.  There is a few things I'm waiting to get clarification on and if it's agreeable then mediation would not be necessary." Id. at 5.  The parties did not reach a final agreement on the proposed IEP that week, and on April 23, 2018, a mediation session was held; no final settlement was reached during the mediation session either, and the mediation was converted into a due process hearing to be held before an Administrative Law Judge.

Following a subsequent round of communications and negotiation between the parties, Plaintiffs decided to engage

---

[1] Plaintiffs' statement of material facts excludes mention of this meeting or the proposed IEP, and Plaintiffs did not properly dispute Defendant's statements of fact regarding the meeting or the proposed IEP, as they failed to file a response laying out objections or contradictory evidence as required by the local rules.  Local Rule 56.1 ("The movant shall respond to any such supplemental statement of disputed material facts" by "addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").  Given this failure, and the fact that Plaintiffs have not disputed the authenticity of the evidence submitted by Defendant in support of these statements of fact, the Court will accept these facts regarding the proposed IEP as true and undisputed for purposes of this motion.

legal counsel, and hired Robert C. Thurston of Thurston Law Offices LLC to represent them on behalf of J.G. on May 8, 2018. Thurston filed his appearance in the due process proceeding, and then began drafting an amended due process complaint and sent a request to Defendant for all of J.G.'s records.

On May 17, 2018, Plaintiffs filed their amended due process complaint, alleging violations of the IDEA, the New Jersey Law Against Discrimination, New Jersey's Special Education Law, the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983. The complaint sought compensatory education for J.G. and a school-funded AAC device, as well as $150,000 in compensatory damages and $500,000 in punitive damages. (ECF No. 10-3 Ex. D). On May 23, Defendant filed its Answer, in which it raised several affirmative defenses. After a pre-hearing conference, the matter was transferred to Administrative Law Judge Crowley.

On May 29, Plaintiffs submitted a proposed settlement agreement to Defendant. The proposal called for 5 speech therapy sessions a week for 20 minutes per session, 1 hour of occupational therapy a week, $5,000 in compensatory tutoring services, and that Defendant pay for a variety of other services and Plaintiffs' attorney's fees. This proposal was not accepted by Defendant. On June 6, 2018, Plaintiffs then filed a motion to strike Defendant's affirmative defenses; Judge Crowley

ultimately dismissed the motion without prejudice to allow for discovery on those arguments, but noted that the defenses "appear to be inapplicable to this matter," and ordered Defendant to file a motion regarding affirmative defenses after discovery was completed.  (ECF No. 10-3 Ex. K at 2).  Defendant failed to do so, and the defenses were later barred.

Over the following months, the parties engaged in negotiations regarding a new IEP, and began the discovery process.  Finally, Judge Crowley converted the previously scheduling hearing, scheduled for September 17, 2018, into a settlement conference.  At the conference, the parties finally reached an agreeable settlement; however, attorney's fees and costs were explicitly not included, because Judge Crowley stated that she did not have the authority to grant them.

Judge Crowley requested that the parties place the agreement into writing for her to enter as a final Order, which Thurston agreed to do.  That same day, Thurston drafted a proposed settlement based on the agreement reached in the conference, which he sent to Judge Crowley without giving Defendant's counsel an opportunity to review or provide comments.  Judge Crowley then entered an Order approving the settlement, following which Defendant's counsel contacted her and informed her that they had not been able to review the draft prior to its submission and had concerns about certain language.

6

The Order was rescinded, and after over two weeks of further negotiation to reach agreeable language, a final agreement was submitted on October 3, 2018.  The final Settlement Agreement provided for "20 minutes of speech-language therapy four times (4x) per week" and "30 minutes of occupational therapy in a one-to-one (1:1) setting per week."  (Pl. SOMF at ¶ 76).

Judge Crowley entered a final Order approving the settlement on November 23, 2018.  Plaintiffs then filed the present action seeking attorney's fees on January 17, 2019, (ECF No. 1).  Over the following months, the parties engaged in disputes regarding discovery requests made by Defendant; ultimately, Defendant filed a Motion to Compel Discovery.  (ECF No. 16).  After briefing on the motion was completed, Magistrate Judge Karen Williams entered a Discovery Order, largely siding with Defendant and ordering Plaintiffs to produce certain documents and respond to interrogatories.  (ECF No. 20).

Following further discovery, Plaintiffs filed their present motion for summary judgment on March 24, 2020. (ECF No. 31). Defendant filed its objection to the motion on May 22, 2020, (ECF No. 34).  Following this objection, Plaintiffs not only filed their reply brief in support of the motion, (ECF No. 36), but also filed a motion to strike numerous paragraphs from Defendant's opposition brief and exhibits attached to it.  (ECF No. 35).  Defendant opposed this motion to strike.  (ECF No.

7

39).  Finally, on June 1, 2020, Plaintiffs filed a document requesting redactions to certain exhibits they had filed in support of their motion.  (ECF No. 38).

## Discussion

### A. Subject-Matter Jurisdiction

As an action seeking attorney's fees under 20 U.S.C. § 1415, the Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(3)(A), which grants district courts jurisdiction over any "action brought under this section." J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002).

### B. Plaintiffs' Request for Redactions

The Court first addresses Plaintiffs' filing requesting redactions to certain exhibits they filed in support of their motion for summary judgment.  (ECF No. 38).  In this District, Local Civil Rule 5.3 governs motions to seal or otherwise restrict public access to materials filed with the Court and judicial proceedings themselves.  To redact a docket entry, the Rule requires that the party file a motion to redact, which must be publicly filed and "shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R.

8

5.3(c)(2).  The moving party must submit a proposed order that contains proposed findings of fact and conclusions of law. L. Civ. R. 5.3(c)(3).

Here, Plaintiffs have submitted nothing other than a list of previously filed documents they now wish to have replaced with redacted versions, and redacted versions of those documents.  With no further information or related motion, the Court will not grant the request.  Plaintiffs will be permitted to file a motion which follows the requirements of Local Rule 5.3, at which point the Court will address their request.

### C. **Motion to Strike**

The Court turns next to Plaintiffs' motion to strike certain arguments and exhibits advanced by Defendant in their briefing.  Plaintiff requests that the Court strike 11 arguments from Defendant's brief in opposition to summary judgment, as well as 13 exhibits Defendant filed in support of that brief. Defendant argues that Plaintiffs' motion to strike is procedurally improper.

The Court agrees with Defendant, and will deny Plaintiffs motion.  Rule 12(f), which Plaintiffs cite as the basis for their motion, provides that a party may move the court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  While Plaintiffs point to

9

dictionary definitions to argue that briefs and related exhibits count as "pleadings," they entirely disregard that the Federal Rules of Civil Procedure themselves include a list of permitted "pleadings," which does not include motions, briefs supporting motions, or attached exhibits, and addresses motions under a separate subsection.  See Fed. R. Civ. P. 7.

Numerous other courts in this district have similarly reached the conclusion that a motion to strike another party's motion, supporting brief, or exhibits attached to a motion is procedurally improper. See, e.g., Kaplan v. Saint Peter's Healthcare System, No. 13-2941 (MAS) (TJB), 2019 WL 1923606, at *6 (D.N.J. Apr. 30, 2019) ("[B]riefs are, by their nature, argumentative and sometimes contentious filings, [thus], it is generally held that a brief—as opposed to other forms of pleadings—typically will not be considered a 'pleading' which is properly the subject of a motion to strike."); In re Amarin Corp. PLC., 13-CV-6663 FLW TJB, 2015 WL 3954190, at *3 (D.N.J. June 29, 2015) ("[T]he Court denies Plaintiff's motion [to strike], because Plaintiff does not move to strike any statements from a pleading; rather, Plaintiff seeks to strike statements made in a reply brief."); In re Schering-Plough Corp./Enhance Sec. Litig., No. 08-CV-397 (DMC), 2009 WL 1410961, at *2 (D.N.J. May 19, 2009) ("Rule 12(f) speaks only in terms of striking matters from 'a pleading,' and makes no provision for

materials attached to, for example, motions to dismiss or to strike. Accordingly, because Plaintiffs attempt to strike declaration exhibits attached to Defendants' motions, rather than to parts of a pleading, Plaintiffs' motion to strike is procedurally incorrect and should be denied."). Accordingly, Plaintiffs' motion to strike will be denied.

However, the Court must still assess whether the evidence relied upon by the parties can be considered on a motion for summary judgment. After reviewing the parties' briefs, the focal issues seem to center on a series of documents relating to negotiations between the parties prior to the initial April 23, 2018 IEP meeting, and an email sent by Thurston to his clients.

Plaintiffs present two arguments for why Defendant's evidence related to the parties' settlement negotiations before Thurston was hired is inadmissible and should not be considered by the Court. First, they argue that the Court may not consider such evidence under Federal Rule of Evidence 408, which governs whether evidence related to compromise negotiations is admissible. However, the Third Circuit has been clear in holding that evidence of settlement negotiations is relevant and admissible for assessing counsel's effectiveness for purposes of a fee petition:

> "While evidence of settlement negotiations is inadmissible
> to prove the merit or lack of merit of a claim, the use of
> such evidence as bearing on the issue of what relief was

11

sought by a plaintiff does not offend the clear terms of Rule 408. Such evidence can be relevant when comparing what a plaintiff 'requested' to what the plaintiff was ultimately 'awarded' . . . While evidence of settlement negotiations is only one indicator of the measure of success, it is a permissible indicator that is not precluded by Rule 408." Lohman v. Duryea Borough, 574 F.3d 163, 167-68 (3d Cir. 2009).

Plaintiffs' argument that Lohman does not apply here, because it was a fee dispute in a civil rights case rather than under the IDEA, is without merit; the Lohman court's analysis focused on admissibility under Rule 408, and was not limited to specific fee-shifting provisions or specific statutes.

Second, Plaintiffs argue that evidence related to settlement discussions cannot be considered because New Jersey's administrative code provides that in the context of special education disputes, "[d]iscussions that occur during the mediation process shall be confidential and shall not be used as evidence in any subsequent . . . civil proceedings." N.J.A.C. § 6A:14-2.6(d)(7). Similarly, they argue that the parties signed a confidentiality pledge as part of the Settlement Agreement, as provided for in § 6A:14-2.6(d)(8). The Court first notes that Plaintiffs themselves have referenced specific stances taken by Defendant during the mediation in their own statement of facts, (see ECF No. 31-2 at ¶ 16), dramatically undercutting their own arguments.

12

However, the Court will address the confidentiality argument.  These New Jersey provisions are identical to, and presumably taken from, parallel provisions of the IDEA itself, 20 U.S.C. §§ 1415(e)(2)(G) and (e)(2)(F).  At least two other courts have discussed the impact of those provisions on what evidence may be considered in similar contexts.

In J.D. ex rel. Davis v. Kanawha Cty. Bd. of Ed., 571 F.3d 381 (4th Cir. 2009), a school board appealed a district court's award of attorney's fees following an IDEA due process hearing, arguing that "the relief finally obtained by the parents [was] not more favorable" than the board's earlier settlement offer. Id. at 386.  In granting attorney's fees, the district court had refused to consider evidence of the board's settlement offer, which offered to settle "on the terms and conditions set forth in the settlement agreement reached but not signed at the mediation session," citing § 1415(e)(2)(G).  Id. at 385.  The Fourth Circuit agreed, stating that the confidentiality provisions demonstrated congressional intent to strongly encourage mediation under the IDEA.  Id. at 386.

The district court in I.W. by and through Karen K. v. Hardin-Jefferson Independent Sch. District, No. 1:15-CV-332, 2017 WL 5644386 (E.D. Tex. Jan 4, 2017) reached a different conclusion under slightly different facts.  There, the plaintiffs argued that a settlement offer was inadmissible,

citing to <u>Kanawha</u>.  <u>Id</u>. at *7.  The court disagreed, finding
that the facts were distinguishable and holding that the
information could be considered.  <u>Id</u>.  Most importantly, the
Court noted that the settlement offer in question was negotiated
and drafted entirely after the mediation had taken place, and
did not incorporate any discussions from the mediation or any
terms negotiated during it.  <u>Id</u>.

    The Court finds that the present facts are more similar to
those found in the latter case.  None of the documents in
question reference or rely on any discussion that took place at
the April 23, 2018 mediation — in fact, all three exhibits pre-
date the mediation session.  Defendant's Exhibit A is an email
conversation that took place on March 28 and 29, a month earlier
than the mediation.  (ECF No. 34-5 Ex. A).  Exhibits B and C are
both dated April 16, a week prior to the mediation; in fact,
Exhibit C involves Plaintiff Catherine Gresko stating that the
parties had just discussed a potential IEP, represented in
Exhibit B, and that "if it's agreeable then mediation would not
be necessary."  (<u>Id</u>. at Ex. B and C).  Simply mentioning that
mediation might, or might not, occur in the future is
insufficient to restrict the Court from considering a document.

    Plaintiffs also argue that an email exhibit cannot be
considered because they violate the attorney-client privilege.
This argument can be dismissed quickly, as the email they claim

is privileged discusses only an increase in Thurston's billed fee and the parties' current billing arrangement, (ECF No 34-5 Ex. N), and "[t]he attorney-client privilege does not shield fee arrangements." Montgomery Cty. v. Micro Vote Corp., 175 F.3d 296, 304 (3d Cir. 1999).

With these questions decided, the Court now turns to Plaintiffs' motion for summary judgment.

### D. Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## E. **Plaintiffs' Fee Petition**

Plaintiff's brought their fee petition pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I), which provides that "[i]n any action or proceeding brought under [§ 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." Accordingly, there are two questions

presented to the Court: whether Plaintiffs' are "prevailing parties," and whether the fees and costs requested are "reasonable."  These are both questions of law that are appropriately determined on a motion for summary judgment.  K.N. v. Passaic City Bd. of Ed., No. 11-399 (JLL), 2011 WL 5157280, at *5 (D.N.J. Oct. 29, 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

### 1. Plaintiffs qualify as "prevailing parties" and are entitled to reimbursement of their reasonable attorney's fees and costs.

In assessing a fee petition, the Court must first assess whether Plaintiffs qualify as "prevailing parties."  To "prevail" under the IDEA, "a party must obtain a 'material alteration of the legal relationship of the parties' that is 'judicially sanctioned.'"  M.R. v. Ridley School District, 868 F.3d 218, 224 (3d Cir. 2017) (quoting Raab v. City of Ocean City, 833 F.3d 286, 292 (3d Cir. 2016)).  A party is considered a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  S.P. v. Penn. Dept. of Ed., 731 F. App'x. 113, 115 (3d Cir. 2018) (quoting J.O. v. Orange Twp. Bd. of Ed., 287 F.3d 267, 271 (3d Cir. 2002)).

Defendant raises three arguments for why Plaintiffs do not qualify as prevailing parties and are not eligible for attorney's fees: (1) they "only achieve[d] modest success," and

therefore there was no material alteration of the legal relationship of the parties; (2) the Administrative Law Judge did not make a finding that they were a prevailing party; and (3) Plaintiffs are ineligible under 20 U.S.C. § 1415(i)(3)(D)(i) because they rejected an earlier offer and their final relief was not more favorable than that initial settlement offer.  The Court disagrees on all fronts, and finds that Plaintiffs qualify as prevailing parties.

First, Defendant argues that because Plaintiffs only achieved "modest success," they cannot be prevailing parties. To support this argument Defendants refers the Court to Farrar v. Hobby, 506 U.S. 103, 118 (1992), which it cites for the proposition that "De minimus awards are not entitled to fees." (ECF No. 34 at 3).  However, as the Third Circuit has noted, Farrar instead "clarified the distinction that exists between the issue of plaintiff's eligibility for an attorney's fee award and the amount of the attorney's fee that should be awarded." P.N. v. Clementon Bd. Of Educ., 442 F.3d 848, 855 (3d Cir. 2006).  A party's limited success is properly addressed in determining the amount of fees awarded; "[r]egardless of how substantial their success, if plaintiffs succeeded on a significant issue they are entitled to prevailing party status." Id. at 856.  Here, Defendant does not appear to truly argue that Plaintiffs did not achieve such success.  Under any

interpretation of the facts, Plaintiffs achieved 20 extra
minutes of speech therapy a week — an increase in the most
essential aspect of the relief Plaintiffs sought.

Defendant next argues that because the ALJ in the
underlying due process hearing did not make a finding that
Plaintiffs were prevailing parties, they do not qualify as such.
Defendant does not provide any support for this argument, and
this is not a requirement for qualifying as a prevailing party.
Instead, a stipulated settlement is "judicially sanctioned" and
sufficient to provide prevailing party status "where it: 1)
contains mandatory language; 2) is entitled 'Order,' 3) bears
the signature of the [] judge, not the parties' counsel; and 4)
provides for judicial enforcement." P.N., 442 F.3d at 853
(citing John T. ex rel. Paul T. v. Delaware County Intermediate
Unit, 318 F.3d 545, 556 (3d Cir. 2003)).  Here, Judge Crowley
incorporated the Settlement Agreement into a final Order, which
bears her signature, contains mandatory language, and provides
for judicial enforcement.  (ECF No. 10-4 Ex. AB).  Accordingly,
it is sufficient to confer prevailing party status.

Finally, Defendant also argues that Plaintiffs are not
entitled to attorney's fees under 20 U.S.C. § 1415(i)(3)(D)(i).
That provision provides that a parent may not receive attorney's
fees "for services performed subsequent to the time of a written
offer of settlement to a parent" if: "(I) the offer is made . .

19

. more than ten days before the proceeding begins; (II) the offer is not accepted within ten days; and (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement."  However, Defendant has conceded that, at the very least, Plaintiffs achieved 20 extra minutes of speech therapy a week than was provided for in their offer — relief that is, on its face, more favorable.  For these reasons, the Court finds that Plaintiffs are prevailing parties under the IDEA and are entitled to reasonable attorney's fees.

## 2. **Plaintiffs' attorney's fees for the due process proceeding will be reduced.**

The next question is whether the actual fees requested by the prevailing parties are reasonable, or require any reductions by the Court.  For the underlying due process proceeding, Plaintiffs seek fees totaling $28,740.07.  Defendant, unsurprisingly, disputes this amount.  For the reasons expressed below, the Court will make reductions to this amount.

"The starting point for determining the amount of a reasonable fee is the lodestar approach."  McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Under the lodestar approach, "court[s] determine[] an attorney's lodestar award by multiplying the number of hours he or she reasonably worked on a

client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 773 (3d Cir. 2019) (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  "The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits ... that the requested hourly rates meet this standard." School District of Philadelphia v. Kirsch, 722 F. App'x. 215, 229 (3d Cir. 2018) (quoting Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001)).

"[O]nce the fee petitioner 'submit[s] evidence supporting the hours worked and rates claimed,' the party opposing the fee application has the burden to challenge the reasonableness of the requested fee." J.L. v. Harrison Township Bd. of Educ., No. 14-2666 (RMB/JS), 2017 WL 1954535, at *2 (D.N.J. May 11, 2017) (quoting McKenna, 582 F.3d at 459).  If sufficiently specific objections to the requested fees are raised, "a district court 'has a great deal of discretion to adjust the fee award in light of those objections.'" Id. (quoting Taylor v. USF-Red Star Exp., Inc., 212 F. App'x. 101, 111 (3d Cir. 2006)).

a. **Reasonableness of counsel's hourly rate.**

The Court must first assess the hourly rate put forth for Plaintiffs' counsel.  Fees awarded under § 1415 "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

Plaintiffs here have put forth hourly rates of $375 per hour for work done through June 30, 2018, and $400 per hour starting on August 1, 2018.  In support of this hourly rate, Plaintiffs first point to the experience of their counsel, Robert Thurston.  Thurston has practiced law for over thirty years, focusing on special education law for the past ten years, and has served as counsel in numerous other special education cases in both state and federal courts.  (ECF No. 1-1).

More importantly, Plaintiffs submit declarations from four attorneys specializing in special education cases, Dorene J. Philpot, John Rue, Catherine Merino Reisman, and Denise Lanchantin Dwyer.  (ECF No. 10-7, 10-8, 10-9, and 10-10).  While Philpot practices in Texas and therefore her declaration is of less relevance here, the other three attorneys all practice within this circuit's geographical area.  Their declarations all support Thurston's hourly rates, stating that they are standard and reasonable for an attorney of his experience practicing in the sphere of special education cases, which they state are

"complex, requiring specialized skills in litigation, administrative law, and knowledge of an intricate regulatory scheme."  (See ECF No. 10-9 at ¶ 22; ECF No. 10-11 at ¶ 10). Two of the attorneys, John Rue and Denise Lanchantin Dwyer, practice special education law within this state and district, and declare that based on their knowledge of the relevant market, the District of New Jersey, as well as the complexity and specialization involved in special education cases, they view Thurston's $400 rate as being "on the low end."  (ECF No. 10-8 at ¶ 14; ECF No. 10-11 at ¶ 12).  A third, Catherine Merino Reisman, supports Thurston's $400 hourly rate by noting that she has previously had a rate of $475 approved by the District Court for the Eastern District of Pennsylvania in a 2017 IDEA case. (ECF No. 10-9 at ¶ 17 (citing Sch. District of Phila. v. Kirsch, No. 14-4910, 2017 WL 131808 (E.D. Pa. Jan. 11, 2017)).

Defendant, for its part, actually "concedes that the Court would likely find the rate of $250 to $400 an hour from a solo practitioner litigating a straight forward matter in the Office of Administrative Law is reasonable."  (ECF No 34 at 8-9). Instead, Defendant only argues that Plaintiff's counsel's fee is a "fiction," because Plaintiffs themselves were not paying this rate as part of a fee agreement between them and their counsel and counsel does not put forth evidence that other clients are paying this rate.  Id. at 12-13.

However, Defendant's argument is misplaced, as the Court's
focus at this stage is on the "community market rate" rather
than the actual fees paid by the clients: "public-interest law
firms that typically charge clients below-market fees, or no
fees at all, are nonetheless entitled to compensation based on
prevailing market rates in the relevant community." Interfaith
Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 (3rd Cir.
2005) (citing Student Pub. Interest Research Group v. AT & T
Bell Labs., 842 F.2d 1436, 1448 (3rd Cir. 1988)).  The Court
finds that, given the evidence put forth by Plaintiffs and the
fact that Defendant has conceded that $400 is within a
reasonable range, Thurston's hourly rates are reasonable for an
experienced attorney practicing in this specialized area of law
in the Philadelphia and southern New Jersey region.

**b. Reasonableness of hours billed to the underlying due process proceeding.**

The next question for the Court is whether counsel's billed
hours are reasonable.  Plaintiffs have submitted full billing
records for each proceeding, which include time entries
accounting for the entire requested amount.  Defendants have put
forth numerous arguments for reductions.

Defendant argues that the hours billed by Plaintiffs'
counsel for the underlying proceeding are not reasonable because
"Plaintiffs spent tens of thousands of dollars" (1) litigating
dubious discovery disputes, (2) filing motions to strike, (3)

24

preparing experts' curriculum vitaes, (4) remedying inadvertent productions, and (5) doing administrative tasks.  (ECF No. 34 at 14).  They further argue that "Plaintiff's counsel caused great expense and delay when he submitted a Consent Order for settlement without the consent of Defendant."  Id.

Defendant's brief does not specify which of its arguments were directed at Plaintiffs' requested fees for the underlying due process proceeding and which were directed at the fees requested for the present fee petition.  However, the Court's review of the record and Defendant's counter statement of material facts makes clear that the only arguments applicable to the present analysis are those regarding time spent on Plaintiff's motion to strike in the due process hearing, entries for administrative tasks, and the great expense and delay allegedly caused by Plaintiff's counsel.

Defendant does not explain why it believes that the time spent by Plaintiffs' counsel preparing the motion to strike affirmative defenses in the underlying action was unreasonable. Plaintiffs' motion was ultimately denied without prejudice, as Judge Crowley determined that discovery would be needed to fully assess the motion and the relevance of the affirmative defenses Plaintiffs' sought to have stricken.  (ECF 10-3 Ex. K at 2). However, the record shows that Judge Crowley also found that the affirmative defenses "appear to be inapplicable to this matter,"

ordered Defendants to file a motion regarding their desired affirmative defenses after discovery was completed, and ultimately barred Defendant from raising the affirmative defenses after it filed no such motion.  Given these facts, the Court will not find time spent on this motion unreasonable.

The Court does agree, however, that Plaintiffs are not entitled to fees for time billed by Thurston on administrative tasks.  "[A]dministrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." Bilazzo v. Portfolio Recovery Assocs., LLC, 876 F. Supp. 2d 452 (D.N.J. June 25, 2012) (citing Levy v. Glob. Credit & Collection Corp., No. 10-cv-4229, 2011 WL 5117855, at *6 (D.N.J. Oct. 27, 2011)).  "Administrative tasks generally include, but are not limited to, opening a file in a database, entering case updates in a management system, mailing letters, copying documents, calendaring deadlines, confirming contact information, and talking with a process server or court clerk." Id. (citing Levy, 2011 WL 5117855, at *6).  Defendant specifically disputes the following entries as including administrative tasks:

- 5/8/2018 – "Receive and review email from client forwarding casefile and prehearing notice from OAL; legal analysis re same; email to client re same; docket prehearing date"
    - Time - 0.7
    - Amount - 262.50

- 6/2/2018 – "Lengthy email to client summarizing status conf call with judge and trial dates; docket same"
    - Time – 0.2
    - Amount – 75.00

- 6/20/2018 – "Receive and review Notice of Hearing for 6/28 via email; docket same"
    - Time – 0.2
    - Amount – 75.00

- 7/18/2018 – "Email to OAL acknowledging change in schedule for 8/15 status conference; docket same"
    - Time – 0.1
    - Amount – 37.50

ECF No. 34-2 at ¶ 31 (citing ECF No. 1-1 Ex. B, PageIDs 36, 39, 41, 43).

The Court agrees that the time billed to "docketing" dates constitute administrative tasks. The entries from 6/2 and 6/20 both involve two separate tasks and 0.2 hours of billed time – the Court will accordingly deduct 0.1 hours from each entry. The 7/18 entry is only billed to 0.1 hours, so the Court will deduct it entirely. Finally, the 5/8 entry involves 4 related tasks totaling 0.7 hours. As the Court deducted 0.1 hours for "docketing" from the other three entries disputed by Plaintiffs, it will do the same here. Accordingly, the Court will deduct 0.4 hours from Plaintiffs' fees. As these entries are all dated during the period at which Thurston's hourly rate was $375, the Court will reduce Plaintiffs' fee award by $150.

Defendant next argues that Plaintiffs' fees should be reduced because Thurston "caused great expense and delay when he submitted a Consent Order for settlement without the consent of

27

Defendant." (ECF No. 34 at 14). Plaintiffs do not appear to dispute that Thurston did in fact submit the proposal without first providing Defendant's counsel the opportunity to review. While the fact that further negotiation was needed to reach language more agreeable to all parties demonstrates that some amount of additional time would have necessarily been billed to resolving these disagreements regardless, it is clear that Thurston's actions did result in additional delay and expense.

Accordingly, the Court will make a 50% reduction in the associated fees. The Court's review of Thurston's submitted entries from September 17, 2018 through October 3, 2018, the dates between submission of the initial proposed agreement and submission of the final agreement, reveal that he billed 3.9 hours to this issue at $400 per hour, totaling to fees of $1,560. (ECF 1-1 Ex. B, PageID 47-49). The Court will therefore reduce Plaintiff's fees by an additional $780.

### c. **Plaintiffs' fee award will be reduced due to limited success in the underlying due process proceeding.**

Finally, Defendant argues at length that the fee award should be drastically reduced due to Plaintiffs' "limited success" in the underlying due process proceeding. (ECF No. 34 at 8-11). Plaintiffs counter that this is not a proper basis for reducing attorney's fees, arguing that under the IDEA, a court may only reduce a fee award under the specific conditions listed in 20 U.S.C. § 1415(i)(3)(F).

28

Plaintiffs are mistaken.  As the Third Circuit has made clear, a court assessing a fee petition for an IDEA case "may adjust a requested legal fee downward based upon the results obtained by counsel for the prevailing party, particularly 'where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.'"  Sch. Dist. Of Phila., 722 F. App'x. at 230 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  D.O., on Behalf of M.O. v. Jackson Twp. Bd. of Ed., No. 17-1581 (TJB), 2019 WL 1923388, at *2 (D.N.J. April 30, 2019) (quoting Farrar, 506 U.S. at 114).  Importantly, "[d]istrict courts have wide discretion to determine whether, and by how much, fees should be reduced for lack of success." D'Orazio v. Washington Tp, 501 F.App'x. 185, 188 (3d Cir. 2012).

Defendant's argument, at its core, is that after the hiring of Thurston as counsel, Plaintiffs achieved only five extra minutes of speech therapy per session than Defendant had offered to Plaintiffs when they were unrepresented.  They also note that Plaintiffs' initial petition brought claims under not only the IDEA, but also the New Jersey Law Against Discrimination, the Americans with Disabilities Act, and § 1983, and sought $150,000 in compensatory damages and $500,000 in punitive damages.  (See ECF No. 10-3).

Defendant's second argument can be rejected briefly.  The number of statutes under which Plaintiffs filed their petition is not relevant here, where the bases of each claims were the same facts and the central goal, to ensure J.G. received increased special education services, was the same under each. See Hensley, 461 U.S. at 434-35.  Similarly, when plaintiffs achieve success in the form of an order ensuring they receive a desired service, their failure to ultimately receive damages as well does not demand a reduction in fees awarded if substantial relief was still obtained.  See id. at 435 n.11 ("[A] plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.").

However, the Court still finds that a downward reduction to Plaintiffs' fees is appropriate here.  First, the Court must address Plaintiffs arguments that the IEP proposed by Defendant prior to the hiring of counsel should not be considered as part of this analysis.  Put simply, the Court entirely disagrees. The central question at this stage is the amount of success achieved by Plaintiffs after the hiring of counsel; the details regarding what offers were on the table for Plaintiffs prior to their engagement of Thurston, and the ultimate differences between those offers and the final agreement, are clearly

30

relevant to the question of whether Thurston "obtained excellent results" for his clients.   Hensley, 461 U.S. at 435.

Here, the undisputed evidence shows that on April 16, 2018, Defendant proposed a new IEP that would provide for 4 sessions of speech therapy per week for 15 minutes, and one 30-minute session of occupational therapy per week — an IEP identical to, if not better than, the services requested in Plaintiffs' initial mediation request.   The final agreement reached with the help of counsel provided for 4 sessions of speech therapy per week for 20 minutes, one 30-minute session of occupational therapy per week, and the use of an AAC device.   To be sure, an increase of 5 minutes per session and the guaranteed usage of an AAC device is certainly not "de minimus" and in no way warrants a full reduction; the additional 5 minutes per session is an increase of 33% and the equivalent of 1.33 extra sessions each week for the entire school year, totaling an extra 640 minutes of speech therapy a year by Defendant's own calculations.   (ECF No. 34 at 12).

However, the record shows that prior to hiring counsel Plaintiffs had already achieved significant success, obtaining an offer that met their initial demands filed in their mediation request.   The Court finds that this fact, considered together with Thurston's inability to obtain the larger demands made in the amended due process petition and his initial settlement

offers, demonstrates that Thurston's success was somewhat limited and a reduction is appropriate.  Despite Defendant's demands for drastic reductions, the Court finds that a smaller reduction of 20 percent is sufficient to account for the level of success achieved by Plaintiffs' counsel.

Therefore, based on Plaintiffs' request for $28,740.07 in fees and costs, the initial deductions of $150 and $780 described above, and the final reduction of 20 percent for limited success, the Court will order Defendants to pay $22,248.06 in fees and costs from the due process proceeding.

### 3. **Plaintiffs' fee award for the fee petition litigation will also be reduced.**

Finally, Plaintiffs also seek attorney's fees and costs associated with this fee petition litigation.  Defendants concede that such "fees on fees" are granted in IDEA cases, and instead argue again that the Court should exercise its discretion and "drastically reduce" any fee award related to this litigation.  (ECF No. 34 at 15).  For the fee petition, Plaintiffs request an additional $52,713.40, "plus any additional fees incurred from this date forward for the fee petition case."  (ECF No. 37 at 2; ECF No. 36 at 14).

Plaintiff's opposition brief makes five arguments for specific reductions related to the fee petition litigation: that Plaintiffs' counsel ran up costs 1) litigating dubious discovery

disputes, (2) filing motions to strike, (3) preparing experts'
curriculum vitaes, (4) remedying inadvertent productions, and
(5) doing administrative tasks.  (ECF No. 34 at 14).  The Court
agrees with arguments (1), (3), (4), and (5), and will make
corresponding reductions to Plaintiffs' "fees on fees."

First, Defendant argues that Plaintiffs spent
"approximately $11,843" on dubious and unfounded discovery
disputes, and that these fees should be reduced.  Their argument
is based in large part on the opinion of Magistrate Judge
Williams, who, faced with Defendant's Motion to Compel
Discovery, largely ruled against Plaintiffs and ordered them to
produce a number of documents and respond to certain
interrogatories.  In reaching this conclusion, Judge Williams
noted Plaintiffs' "flawed logic," (ECF No. 20 at 14),
"reject[ed] Mr. Thurston's evasive objections to produce the
requested documents in their native file format," (id. at 15),
and finally stated that Thurston had entirely "fail[ed] to
articulate" why an email was protected by attorney-client
privilege, a short-coming also found in Plaintiffs' present
motion to strike.  Id. at 15 n.3.

However, the Court also ruled in Plaintiffs' favor on at
least one point, and otherwise appeared to have accepted
Plaintiffs' arguments as worthwhile objections, even if
insufficient to avoid being compelled.  Similarly, it is clear

from the record that both parties contributed to the extension

of the discovery process, as Defendants similarly were forced to

refile their motion to compel and filed a reply brief they were

not granted permission to file.  Id. at 12 n.2.  Accordingly,

while the Court views a reduction in Plaintiffs' fees associated

with this discovery dispute as necessary, it will not deduct the

full $11,843.  As the Supreme Court has noted, "[t]he essential

goal in shifting fees ... is to do rough justice, not to achieve

auditing perfection."  Fox v. Vice, 563 U.S. 826, 838 (2011).

Here, the Court views a 30% reduction to these fees as

sufficient to account for Plaintiffs' dubious discovery

objections, and will accordingly make a reduction of $3,552.90.

Second, Defendant argues that the Court should make

reductions for time spent by Plaintiffs' counsel on the motion

to strike numerous of Defendant's arguments and exhibits in

their opposition to the motion for summary judgment.[2]  As the

Court found above, Plaintiffs' present motion to strike was

---

[2] Plaintiffs argue that Defendant's opposition brief to that
motion constitutes an improper sur-reply, because it requests
that the Court not grant Plaintiffs attorney's fees for work
done in drafting that motion.  (ECF No. 41 at 1-2).  The Court
disagrees.  Plaintiffs filed an improper motion to strike after
Defendant's last opportunity to address the fee petition, and
now request that the Court order Defendant to reimburse them for
the time spent drafting that improper motion.  While the Court
will not fully incorporate Defendant's opposition to the motion
to strike into its opposition to summary judgment, it will
assess the reasonableness of Thurston's fees related to the
motion to strike.

34

procedurally improper, and introduced an entirely separate round
of unnecessary briefing into this litigation.  Accordingly, the
time spent working on that motion was not reasonable and will be
deducted from Plaintiffs' fees.  The Court has reviewed
Thurston's submitted bills and determined that $3,640 was billed
for the present motion to strike; Plaintiffs' fee award will
therefore be reduced by that amount.  (ECF No. 37 Ex. A).

Defendants next argue for a reduction based on "inordinate
amounts of time preparing their own expert's Curriculum Vitaes
and declarations."  (ECF No. 34-4 at ¶ 20).  From the Court's
review of Plaintiffs' submitted hours, Thurston appears to have
billed between 3.3 to 6.3 hours on drafting declarations for the
expert witnesses Plaintiffs put forth to support this fee
request.  (ECF No. 10-5 Ex. B, PageID 285-86).  However,
Defendant provides no explanation or caselaw to support its
argument that this range of time is an "inordinate" amount of
time to spend on evidence regarding the reasonableness of
Plaintiffs' counsel's hourly rate, which Plaintiffs are required
to submit in support of their petition.  Accordingly, the Court
will make no reduction related to these fees.

Defendant additionally argues that the fees should be
reduced to exclude time related to Thurston's inadvertent
production of materials in discovery, an argument which
Plaintiffs do not appear to dispute.  The Court will not allow

counsel to profit from his errors.  After review of Plaintiffs'
billing entries, the 2.9 hours billed on May 5, 2019 to related
research will not be reimbursed.  (ECF No. 10-5 Ex. B, PageID
288).  Accordingly, the fee award will be reduced by the $1,160
in fees associated with this time.

Finally, Defendant again requests Plaintiffs' fees be
reduced due to time spent on administrative tasks.  Plaintiffs
object specifically to only one entry related to the current fee
petition litigation:

- 4/8/2019 - Receive and review via ECF Scheduling Order
  from Judge Williams; docket all dates including 6/28
  Status Conference;
     o Time – 0.3
     o Amount - 120.00

(ECF No. 10-5 Ex. B, PageID 285).

The Court agrees, and will accordingly deduct 0.2 hours, or $80,
from Plaintiffs' award.

With those decisions made, the Court must again consider
whether any further reductions are necessary based on the
actions and success of Plaintiffs in litigating the fee
petition.  "[T]he reduction analysis for the fees generated from
litigating the fee petition is independent from the reduction
analysis applied to the underlying litigation."  United States
ex rel. Palmer v. C&D Technologies, Inc., 897 F.3d 128, 142 (3d
Cir. 2018).  Specifically, the Third Circuit has approved of
courts reducing fees awarded related to a fee petition due to

limited success in the fee petition litigation when the court
had issued multiple reductions of the fees requested.  See
Scanno v. F.H. Cann & Associates, Inc., 794 F. App'x. 220, 223
(3d Cir. 2019) (citing Institutionalized Juveniles v. Sec'y of
Pub. Welfare, 758 F.2d 897, 924 (3d Cir. 1985)).

The Court will make a similar reduction here, as
Plaintiffs' have achieved limited success on their fee petition.
As outlined above, the Court made a 20 percent reduction to
Plaintiffs' fees for the underlying proceeding due to limited
success, has made additional reductions to their requested fees
for this petition for four separate reasons, and has found that
Plaintiffs improperly extended the fee petition litigation.
Those reductions have totaled approximately 18 percent of the
$81,453.47 in fees and costs requested in this petition.
Accordingly, the Court will reduce Plaintiffs' request for the
fees associated with this petition by an additional 18 percent.
Based on Plaintiffs' request of $52,713.40 in additional fees,
the specific reductions outlined above, and this final reduction
of 18 percent, the Court will grant Plaintiffs $36,310.01 in
fees related to this fee litigation.

Finally, Plaintiffs' counsel also requests permission to
file an additional certification outlining further costs for
work done past its last declaration.  However, Plaintiffs' most
recent declaration already covered all work done for the present

37

motion for summary judgment, with their only other documents filed after that being Plaintiffs' reply brief in support of their improper motion to strike and Plaintiffs' request for redactions.  As stated above, the motion to strike was improper, and Plaintiffs did not follow the local rules in making their redaction request.  Given these errors on Plaintiffs' part, the Court will not grant Plaintiffs' counsel leave to file another certification at this time.  If this litigation extends beyond the Court's Order on the fee petition and Plaintiffs' submission of a proper motion to redact, Plaintiffs may make their request to file an updated Certification again at that point.

## Conclusion

For the reasons expressed above, Plaintiffs' motion to strike (ECF No. 35) is denied, and their motion for summary judgment (ECF No. 31) is granted in part.  The Court has determined that certain reductions to the attorney's fee are necessary, and will accordingly order Defendant to reimburse Plaintiffs' attorney for $22,248.06 in fees and costs associated with the underlying due process proceeding and $36,310.01 in fees and costs associated with the present litigation, for a total reimbursement of $58,558.07.

An appropriate Order will be entered.

Date: October 13, 2020                    /s Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.